IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  | : | Civil No. 1: 16-cv-01163 |
|---|---|---|
| **HEIDI HANRECK and RAYMOND ANDRAROWSKI** | : | |
| **Plaintiffs,** | : | |
|  | : | |
| **v.** | : | |
|  | : | |
|  | : | |
| **WINNEBAGO INDUSTRIES, INC.,** | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

In the instant matter, Plaintiffs Heidi Hanreck and Raymond Andrarowski ("Plaintiffs") seek monetary damages for breach of express and/or implied warranties in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. 2301, *et seq.* ("MMWA") and in violation of state consumer protection laws, related to the sale of a recreational vehicle sold by Defendant Winnebago Industries, Inc. ("Defendant"). Presently before the court is Defendant's motion for summary judgment as to all counts (Doc. 37,) as well as several motions *in limine* filed by both parties. For the reasons that follow, Defendant's motion will be granted in part and denied in part.

## I.    Background

On April 4, 2015, Plaintiffs purchased a 2013 Winnebago Adventurer Model 35P Recreational Vehicle ("RV") from "Camping World of Hudson Valley" in Kingston, New York ("Camping World"). (Doc. 37-1, ¶ 1.) The RV was delivered

to Plaintiffs on April 30, 2015. (Doc. 80, ¶ 1.) Plaintiffs registered their vehicle, although it is unclear if they did so upon purchase or receipt, and Defendant provided a New Vehicle Limited Warranty (the "Warranty"). In pertinent part, the Warranty guaranteed that Defendant or one of its authorized dealers would provide for the repair or replacement of component parts deemed defective in material or workmanship within the first twelve months of ownership of the RV. (Doc. 37-1, ¶¶ 16-20.) In the event that the repairs are unsatisfactory or impractical at an authorized dealer, the Warranty provides that Defendant may request that the vehicle be transported to one of Defendant's factories for more extensive repairs. (*Id.* at 21; Doc. 80, ¶ 22.) If the customer refuses this request, the Warranty is deemed void with respect to that particular repair or issue. (*Id.* at 22.)

After taking possession of the RV, Plaintiffs "established residency" in Florida, and registered the RV in that state. (Doc. 80, ¶¶ 12-13.) Although Plaintiffs disagree that they were living in the RV full time or considered it their permanent residence, they did not have a physical home and actually sold their last physical home immediately after purchasing the RV. After registering the vehicle, they embarked upon a yearlong sojourn across the continental United States. Their journey was less than stellar. In sum, they presented the RV for repair under the Warranty at the following dates and locations:

Camping World Kingston, NY 4/4/15 - 4/30/15
Lenrich Mobile Services, NY 6/1/15

> Camping World Hendersonville, NC 9/3/15
> Camping World Harrisburg, PA 9/15/15 - 10/1/15
> Camping World Belville Port Clinton, OH 10/2/15
> Camping World of Belville, MI 10/3/15
> Camping World Albuquerque, NM 11/6/15
> Camping World Tucson, AZ 11/25/15 - 12/1/15
> Camping World Mesa, AZ 12/14/15
> Camping World Newhall, CA 2/22/16 - 2/26/16

(Doc. 80, ¶ 27.) On or around December 3, 2015, Plaintiffs apparently contacted Defendant directly for the first time. (Doc. 37-1, ¶ 30.) Plaintiffs exchanged several emails with Defendant's representative while travelling through New Mexico and Arizona. (*Id.* at ¶¶ 31-35.) Despite combing the desert for an acceptable facility, Plaintiffs were unsatisfied with the repairs performed by Defendant's authorized dealers. (*Id.* at ¶ 33.) Defendant requested via email that they schedule factory repairs at Defendant's Eugene, Oregon repair site on April 7, 2016, which was apparently chosen to accommodate Plaintiffs' plans to travel from Arizona up the western coast of the United States. (*Id.*) When Defendant's representative followed up with Plaintiffs regarding the April factory repair, Plaintiffs informed them that they were declining the factory repair and intended to pursue legal action against Defendant. (*Id.* at ¶ 35.)

On June 15, 2016, Plaintiffs filed the instant action (Doc. 1), and subsequently filed an amended complaint on July 10, 2016 (Doc. 7).[1] Defendants filed a motion

---

[1] The parties have also filed a number of motions *in limine*: Defendant's motion for admission of felony conviction (Doc. 39), Defendant's motion to preclude expert witness (Doc. 41), Defendant's motion to preclude video inspection footage (Doc. 43), Plaintiffs' motion regarding

for summary judgment as to all counts on April 27, 2018. (Doc. 37.) Plaintiffs filed their brief in opposition on June 18, 2018, (Doc. 81), and Defendants filed their reply brief on July 2, 2018 (Doc. 82). Accordingly, the matter has been fully briefed and is ripe for disposition.

## II. Legal Standard

In considering a motion for summary judgment, a court may dismiss claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. Fed. R. Civ. P. 56(a). In order to prevail on a motion for summary judgment, the moving party must produce "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986).

---

attorney fees, statutory damages, and treble damages (Doc. 45), Plaintiffs' motion regarding improper motives (Doc. 47), Plaintiffs' motion to exclude certain opinion's of Defendant's expert witness (Doc. 49), and Plaintiffs' motion to exclude evidence of a witness' criminal convictions (Doc. 51). These motions in limine have been fully briefed and are addressed herein.

Both parties must support their factual assertions by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Rule 56(e) allows the court to deem undisputed any fact not properly countered by record evidence. *See* Fed. R. Civ. P. 56(e)(2). The nonmoving party must then "go beyond the pleadings by way of affidavits, depositions . . . or the like in order to demonstrate specific material facts which give rise to a genuine issue." *Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, the court is not to engage in credibility determinations or the weighing of evidence. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993). Instead, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Id.*

## III. Discussion

### A. Choice of Law

The parties disagree as to whether Pennsylvania or New York law applies. Defendants argue that New York law applies because the sale and warranty were both established in New York, while Plaintiffs argue that Pennsylvania law should apply because no "true conflict" exists between the relevant New York and Pennsylvania substantive law, and, thus, the law of the forum state should apply.

A federal court exercising diversity jurisdiction must apply the choice of law rules employed by the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Pennsylvania's choice of law rules involve a combined "significant relationship test" and a "government interest analysis". *Carrick v. Zurich-American Ins. Grp.*, 14 F.3d 907, 909 (3d Cir. 1994). As a prerequisite, however, the court must first determine if a "true conflict" exists between the relevant laws of New York and Pennsylvania.

In Pennsylvania, different state laws may apply to different issues within a case. *Berg Chilling Sys., Inc. v. Hull*, 435 F.3d 455, 462 (3d Cir. 2006). If the jurisdictions' laws are the same, there is no conflict, and the court's choice of law inquiry ends. *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007). If there are relevant differences between the laws, an actual conflict exists, and the court must then determine if the conflict is "true," "false," or "unprovided-for." *Id.* A "true" conflict exists only if "both jurisdictions' interests would be impaired by the application of the other's laws." *Id.* If the court identifies a true conflict, it "must then determine which state has the 'greater interest in the application of its law.'" *Id.* at 231 (quoting *Cipolla v. Shaposka*, 267 A.2d 854, 855 (Pa. 1970)).[2] If a true

---

[2] In *Hammersmith*, the Third Circuit gave a brief historical retrospective on the evolution of choice of law rules in Pennsylvania. Relevantly, the Court of Appeals noted that:

> Prior to 1964, Pennsylvania courts uniformly applied the law of the place of contract ("*lex loci contractus*") or injury ("*lex loci delicti*") in contract and tort actions, respectively. In *Griffith v. United Air Lines Inc.*, 416 Pa. 1, 203 A.2d 796

conflict exists, the court must "determine which state has the greater interest in the application of its law" by using "a combination of the approaches of both the Restatement II (contacts establishing significant relationships) and 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy)." *Hammersmith*, 480 F.3d at 231 (internal quotations omitted). Accordingly, the court will first determine if a true conflict exists as to each claim asserted by Plaintiffs.

### i.    *Magnuson-Moss Warranty Act and Implied Warranty Claim*

The MMWA, 15 U.S.C. § 2301 *et seq.*, provides a private right of action in federal court for consumers who are damaged by a warrantor's failure to comply with the terms of a written or implied warranty. *See Fleisher v. Fiber Composites, LLC*, No. 12-cv-1326, 2012 WL 5381381 (E.D. Pa. 2012). Under the MMWA:

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 USCS §§ 2301 *et seq.*], or under a written warranty, implied

---

(1964), the Pennsylvania Supreme Court expressly abandoned the "*lexi loci delicti*" rule "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." *Id.* at 805. Under this new approach, Pennsylvania courts are to apply the law of the forum with the "most interest in the problem," rather than the law of the place of injury. *Id.* at 806.

*Hammersmith*, 480 F.3d at 227. The *Hammersmith* court later noted that, although the Pennsylvania Supreme Court has not expressly abandoned the *lex loci contractus* analysis, federal courts predicted that it would do so, and the Pennsylvania Superior Court has so held. *See Budtel Assocs., LP v. Cont'l Cas. Co.*, 915 A.2d 640, 644 (Pa. Super. Ct. 2006); *see also Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 403 (3d Cir. 2016). Relevantly, *Hammersmith* reaffirms that a court performing a choice of law analysis in Pennsylvania may weigh the situs of the contract as a factor in its analysis, but must balance that factor with other interests.

warranty, or service contract, may bring suit for damages and other legal and equitable relief.

15 U.S.C 2310(d)(1). A claim under the MMWA relies on the underlying state law claim. *Id.* The MMWA establishes a remedy under federal law but does not create an independent cause of action from the underlying breach. *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa. 2013) (quoting *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) ("this court's disposition of the state law warranty claims determines the disposition of the [MMWA] claims.")); *see also Woolums v. Nat'l RV*, 530 F. Supp. 2d 691, 696 (M.D. Pa. 2008), *as amended* (Feb. 1, 2008) ("The protections of [the MMWA] are broader than those provided by the [Uniform Commercial Code]"); *compare* 15 U.S.C. §§ 2301, 2310(d)(2) (allowing plaintiff to recover actual damages, costs, and attorney's fees for breach of warranties and other service contracts), *with* 13 Pa. [C.S.] §§ 2313-2315, 2703-2715 (permitting recovery of actual damages for breach of warranty).") Accordingly, for purposes of the choice of law analysis, the court looks to the underlying state law for breach of warranty claims.

The parties agree that there is an actual conflict between Pennsylvania and New York on implied warranties of merchantability because Pennsylvania does not require privity of contract, but New York does. *Compare Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313 (W.D. N.Y. 2013); *with Williams v. W. Penn Power Co.*, 467 A.2d 811 (Pa. 1983). The parties, however, dispute whether this amounts to a

"true conflict." Plaintiffs argue that there is a false conflict as to the states' implied warranty laws because only Pennsylvania's interests would be impaired if its implied warranty law were not applied. They claim that New York's privity requirement was meant to protect *New York* corporations from excess liability, *i.e.* New York has an interest in ensuring that a New York manufacturer is not subjected to suit by a party that purchases a product from a third-party seller. Conversely, Plaintiffs suggest, Pennsylvania's interest in protecting consumers is much broader, and Pennsylvania law protects all consumers regardless of their residency within the Commonwealth. The court agrees with Defendants that Plaintiffs' argument is speculative and is without support in legislative history or case law. Plaintiffs cite to no New York case law where a nonresident manufacturer was denied the protections of New York implied warranty law in contrast to a resident manufacturer. Indeed, such a position may be unconstitutional. *See Bacchus Imports, Ltd. v. Dias*, 468 U.S. 263, 272 (1984) (collecting cases that have invalidated discriminatory state statutes enacted for protectionist purposes).

Instead, New York seems to have an interest in limiting manufacturer liability while Pennsylvania does not. New York has consumer protection laws, as does Pennsylvania, so it is not as if New York has an anti-consumer policy as opposed to Pennsylvania's pro-consumer viewpoint. Instead, it merely seems that New York law is somewhat protective of manufacturers. This position is underscored by the

fact that the privity requirement applies only to cases "where the only loss alleged is economic" as opposed to cases in which a plaintiff alleges bodily harm or other noneconomic losses. *Catalano v. BMW of N. Am., LLC*, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016). The Pennsylvania Supreme Court, in contrast has held that there is "no current societal interest [] served by permitting the manufacturer to place a defective product in the stream of commerce and then to avoid responsibility for damages caused by the defect." *Salvador v. Atl. Steel Boiler Co.*, 319 A.2d 903, 907 (Pa. 1974). Thus, the interests of New York and Pennsylvania conflict with respect to the imposition of liability on a manufacturer. *See Powers v. Lycoming Engines*, 272 F.R.D. 414, 421 (E.D. Pa. 2011) (finding a true conflict between New York and Pennsylvania warranty laws because New York required privity of contract and Pennsylvania does not); *see generally Hammersmith*, 480 F.3d at 230 (citing *Cipolla v. Shaposka*, 267 A.2d 854, 856 (1970) (deciding to "undertake a deeper analysis" because the plaintiff "is a resident of Pennsylvania which has adopted a plaintiff-protecting rule" and the defendant "is a resident of Delaware which has adopted a defendant-protecting rule")). Accordingly, the court finds that a true conflict exists between New York and Pennsylvania's implied warranty law.

Because a true conflict exists, the court will look to the two-pronged Pennsylvania conflict of laws analysis. The first prong applies the Restatement (Second) of Conflict of Laws approach. Under Section 188(2) (the general provision

governing contracts), of the Restatement (Second) of Conflict of Laws, the court must look to the following contacts:

> (1) the place of contracting; (2) the place of negotiation of the contract; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Hammersmith*, 480 F.3d at 233 (internal citations omitted). If the place of negotiation and performance are the same, that state's law will normally be the more significant. Restatement (Second) of Conflict of Laws § 188(3) and cmt. f (1971). Here, the analysis under the Restatement is straightforward. The contract was entered into in New York, negotiated in New York, and the performance and the subject matter of the contract are located in New York, *e.g.* delivery, took place in New York.[3] The remaining factor, the residence of the parties, is neutral as neither party is resident, domiciled, or incorporated in Pennsylvania or New York.

In the second half of the Pennsylvania conflicts of law analysis, the court must consider the "interests and policies that may be validly asserted by each jurisdiction." *Melville v. Am. Home Assur. Co.*, 584 F.2d 1306, 1311 (3d Cir. 1978). Typically, a state will be considered to have an interest in having its law applied to its residents or to protect its residents. *See Powers*, 272 F.R.D. at 423-24. In this

---

[3] In cases involving vehicles, the "location of the subject matter" is generally the location on the day of delivery. *See Powers*, 272 F.R.D. at 423. Also of note, repairs under the express warranty took place in multiple states, at least once in New York and once in Pennsylvania. (Doc. 80, ¶ 27.)

case, neither party is a resident of Pennsylvania or New York.  Insofar as either state has an interest in furthering their respective policies of consumer protection or limiting manufacturer liability, there is no indication that the conflicts of law analysis would give preference to one policy over another.  Accordingly, under the Pennsylvania conflict of laws analysis, New York law applies to Plaintiff's implied warranty claim.

ii.     *Magnusson-Moss Warranty Act and Express Warranty*

Defendants argue that a true conflict exists between Pennsylvania and New York express warranty law because, under Pennsylvania law, a limited warranty entitles a plaintiff to recovery under the MMWA, *see Woolums v. National RV*, 530 F. Supp. 2d 691 (M.D. Pa. 2008), while New York law disallows a refund or replacement remedy for a breach of a limited warranty, *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 223-24.  The MMWA requires each consumer warranty to designate whether it is "full" or "limited."  15 U.S.C. § 2303.  A warranty shall be "full" if it meets the criteria set forth in Section 2304 of the MMWA, which requires (1) that the seller remedy any "defect, malfunction, or failure to conform" to the warranted product standards; (2) the warranty may not impose a limitation of the duration of any implied warranty; (3) the warranty may not exclude or limit consequential damages for breach of any written or implied warranty unless the exclusion or limitation appears "conspicuously" on the warranty; and (4) "if the

product (or a component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be)." 15 U.S.C. § 2304(a). The parties do not dispute that the warranty at issue here is "limited," and, relevantly, it proscribes the recovery of consequential damages for a breach of the warranty terms. Because a limited warranty does not allow for recovery of damages beyond the cost of "repair/replace" for the defective product or part, the recovery under state breach of warranty claims is likewise limited. Because of this limitation, courts have construed the applicability of the MMWA and the availability of remedies thereunder.

Specifically, in *Pyskaty*, the Second Circuit examined the MMWA's jurisdictional requirement that the amount in controversy exceed $50,000. 15 U.S.C.A. § 2310(d)(3)(B) ("No claim shall be cognizable in a suit brought under [the MMWA] . . .if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit"). The district court held that the value of the state law warranty claims and the MMWA claims should not be aggregated in determining whether the plaintiff met the jurisdictional threshold. In determining whether

plaintiff met this threshold, the Second Circuit examined the damages available

under the MMWA:

> Under section 2304 of the MMWA, when a warrantor breaches a "full" written warranty, the plaintiff is entitled to a refund or replacement without charge for the defective product. 15 U.S.C. § 2304(a)(4); *see also id.* § 2303(a)(1) (stating that a written warranty shall be designated as "full" where it "meets the Federal minimum standards for warranty set forth in section 2304"). However where, as here, the warrantor made only a "limited" written warranty, [record cite] ("Buyers Guide") (designating the applicable warranty as a "limited warranty"); Appellant's Br[ief] at 47 n.10 (acknowledging that Pyskaty is not seeking a "refund" under 15 U.S.C. § 2304), the text and legislative history of the Act indicate that "courts [should] look to state law to determine the applicable measure of damages, which informs the amount in controversy."

*Pyskaty*, 856 F.3d at 223.

> The MMWA distinguishes between "full" and "limited" warranties and, subject to certain exemptions, requires that written warranties be "clearly and conspicuously designate[d]" as one or the other. 15 U.S.C. § 2303(a). In order for a written warranty to qualify as a "full" warranty, the warrantor: (1) must agree to remedy the defective product within a reasonable time period and without charge; (2) may not impose any limitation on the duration of any implied warranty on the product; and (3) may not exclude or limit consequential damages for breach of any written or implied warranty on the product, unless such exclusion or limitation appears conspicuously on the face of the warranty. *Id.* § 2304(a)(1)-(3).

*Id.* at 223 n.12. Relevantly, under New York law, recovery under a limited express

warranty is restricted to the difference between the product received and the product

warranted. Contrary to Defendants' assertions, the Second Circuit did not hold that

revocation is unavailable under New York law, but merely that the plaintiff could

14

not seek a refund *under Section 2304 of the MMWA*. The Second Circuit so held because the parties agreed that the relevant warranty was limited and, thus, the remedies were available pursuant to state law rather than the MMWA. New York and Pennsylvania law are identical with respect to the revocation of acceptance due to nonconformity. *Compare* N.Y. U.C.C. Law § 2-608 *with* 13 Pa.C.S. § 2608.

In *Woolums*, the court addressed a factually similar claim where plaintiffs, who were purchasers of a different brand of recreation vehicle, repeatedly sought repairs at various authorized dealers, yet were unsatisfied with the repairs performed. The plaintiffs brought claims both under the UCC, as adopted by Pennsylvania, and the MMWA. Judge Conner denied the defendant's motion for summary judgment as to the MMWA claims and concluded that "a reasonable jury could find that defendants failed to abide by the terms of their warranty, in violation of the [MMWA]. *Woolums*, 530 F. Supp. 2d at 703. The court in *Woolums* did not unequivocally hold that revocation of the contract was unavailable, but merely that a factual issue arose over whether the vehicle had so "failed of its essential purpose" as to entitle plaintiffs to revocation under the UCC.

A review of *Pyskaty* and *Woolums* demonstrates that there is no true conflict between New York and Pennsylvania law, nor are the two decisions incompatible. *Pyskaty* addressed only a jurisdictional question as to whether the amount in controversy was sufficient to support a claim under Section 2310(d)(3)(B) of the

MMWA and concluded that, under a limited warranty, the court must look to the UCC to determine available remedies. In *Woolums*, the court concluded that the plaintiff could seek damages for the written warranty under the MMWA, which incorporates the underlying state law to determine damages under a limited warranty.[4] In essence, both decisions stand for the proposition that the MMWA's expansive remedy scheme is applicable only to full warranties, but a plaintiff may still bring claims under the MMWA and seek remedies available under the relevant state law for breach of a limited warranty. It is uncontroverted that the remedies available under New York and Pennsylvania are the same. *Compare* NY UCC Law 2-714 *with* 13 Pa. C.S. § 2714 and *compare* N.Y. U.C.C. Law § 2-608 *with* 13 Pa.C.S. § 2608. Accordingly, the court finds that Defendants have failed to demonstrate a "true conflict" between the express warranty laws in Pennsylvania and New York. Thus, the law of the forum state, Pennsylvania, applies.

---

[4] Courts in other jurisdictions have reached this same conclusion:

> Breach of an express limited warranty provides a federal cause of action under 15 U.S.C. § 2310(d)(1). *See Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 919 n. 4 (9th Cir.2005). However, the federal remedies described in 15 U.S.C. § 2304(a) only apply to full warranties. (*Id.*) The [MMWA] is "virtually silent as to the amount and type of damages which may be awarded for breach of an express limited warranty." *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir.1979). Thus, courts must look to state substantive law to determine the remedies for breach of an express limited warranty.

*Gusse v. Damon Corp.*, 470 F. Supp. 2d 1110, 1116-17 (C.D. Cal. 2007).

*iii.    Consumer Protection Laws*

Defendant argues that New York Gen. Bus. Law § 349 ("Consumer Protection Law") and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201–1 *et seq.*, ("UTPCPL") conflict because the Consumer Protection Law requires "harm to the general public and not solely because of a contract." In support of this argument, Defendant cites *Mahoney v. Endo Health*, No. 15-cv-9841, 2016 WL 3951185 (S.D.N.Y July 20, 2016). Plaintiff argues that Defendant misreads *Mahoney* to include the "general public" requirement and New York law requires only that a product be offered to the "general public"—*i.e.* consumers—to implicate the Consumer Protection Law.

In *Mahoney*, a plaintiff brought a putative class action against several companies involved with the manufacture and marketing of vitamin tablets. The defendants moved to dismiss, *inter alia*, the plaintiff's claims under the Consumer Protection Law. The *Mahoney* court set forth the elements of a valid cause of action under the Consumer Protection Law as follows:

> To succeed on a § 349 claim, a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice. The New York Court of Appeals has adopted an objective definition of "misleading," under which the alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances. In addition, there must be a causal connection between the misrepresentation and some harm from, or failure of, the product.

*Mahoney*, 2016 WL 3951185 at *9 (internal citations omitted). Relevantly here, the court defined "consumer-oriented conduct" as follows:

> Under New York law, conduct is "consumer-oriented" when it had a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute. This element thus may be satisfied by showing that the conduct at issue potentially affects similarly situated consumers. In sum, the injury must be to the public generally as distinguished from the plaintiff alone.

*Mahoney*, 2016 WL 3951185 at *9 (citing *Euchner-USA, Inc. v. Hartford Cas. Ins. Co.*, 754 F.3d 136, 143 (2d Cir. 2014) ("deceptive conduct aimed at the public at large" is consumer-oriented) (citation omitted)).

Based on this language and the cases cited in *Mahoney*, the court agrees with Plaintiffs' reading of the "consumer-oriented conduct" requirement under New York Law. Simply, the Consumer Production Law creates a distinction between public facing products that are sold to consumers and "private contract disputes" such as specialized or unique products sold pursuant to a private agreement. For example, a custom piece of medical equipment created for a research hospital would not be "consumer-oriented" in the same sense as a diabetic's insulin monitor. The *Mahoney* court itself actually expounds on this distinction and rejects the defendants' argument that the vitamin tablets were not consumer-oriented:

> The defendants contend that the statements at issue were directed to doctors or pharmacists, not patients, and therefore the statements were not meant to mislead consumers. The cases the defendants cite in support of their argument involve large private transactions between

sophisticated businesses and therefore do not address the facts at hand. [*See e.]g.*, *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174, 176 (2d Dep't 2005) ("The transaction in this case was between two companies in the building and supply industry."); *St. Patrick's Home for Aged & Infirm v. Laticrete Int'l, Inc.*, 696 N.Y.S.2d 117, 122 (1st Dep't 1999) ("The transaction in this case was a sizable one between two companies . . . this was not the type of 'modest' transaction that the statute was intended to reach." (citation omitted)).

*Mahoney*, 2016 WL 3591185 at *9-10. In *Weiss*, the New York Appellate Division

Second held that the sale of an exterior coating for home construction from a plastic

manufacturer to a general contractor was not "consumer oriented" because the

synthetic plastic company had no dealings with home buyers. *Weiss*, 802 N.Y.S. 2d

at 176. In *St. Patrick's*, a premade wall panel manufacturer sold wall panels to a

third-party installer, apparently after consultation with the architect and general

contractor, but had no contact with the plaintiffs. *St. Patrick's Home for Aged &*

*Infirm*, 696 N.Y.S. 2d at 120. The court found that the defendants' conduct was not

consumer oriented because it dealt only with "sophisticated business entities. . .

act[ing] in an intermediary role in the transaction, thereby reducing any potential

that a customer in an inferior bargaining position would be deceived." *Id.* at 122

("In short, this was not the type of "modest" transaction that the statute was intended

to reach"); *see also Genesco Entertainment v. Koch*, 593 F. Supp. 743, 752

(S.D.N.Y. 1985) (holding that a negotiation for rental of Shea Stadium was a "single

shot transaction", not a typical consumer transaction and therefore not covered by

section 349). The UTPCPL achieves a similar result albeit by different means.

Pennsylvania courts and the Third Circuit have held that parties who made the relevant purchase or lease for business or commercial purposes may not assert a UTPCPL claim. *New Legion Co., Inc. v. Thandi*, No. 18-cv-778, 2018 WL 2121523, at *5 (E.D. Pa. May 8, 2018) (citing *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 242 (3d Cir. 2002) (doctor could not assert UTPCPL deceptive marketing claim for bone screws he had bought for his professional practice); *Trackers Raceway, Inc. v. Comstock Agency, Inc.*, 583 A.2d 1193, 1197 (Pa. Super. Ct. 1990) (plaintiff failed to state UTPCPL claim where it purchased an insurance policy "for commercial purposes only")). Because both laws require the product at issue be offered to the public for consumer use, there is no actual conflict between the UTPCPL and the Consumer Protection Law. Accordingly, the law of the forum applies here and the court will analyze Plaintiffs' consumer protection claims under the UTPCPL.

### B. Breach of Warranty

Having concluded that New York law applies to Plaintiffs' implied warranty claims, and Pennsylvania law applies to Plaintiffs' express warranty and consumer protection law claims, the court will now address Defendant's argument that Plaintiffs' express warranty claim fails because Plaintiffs voided the warranty. The written warranty provides, in pertinent part:

> This New Vehicle Limited Warranty ("NVLW") is the sole and exclusive warranty applicable to this Winnebago or Itasca motor home

made or authorized by Winnebago Industries, Inc. ("Winnebago") and provides coverage so long as the motor home is used exclusively for recreational purposes in the U.S.A. or Canada.

(Doc. 81, Ex. 6.) The warranty also excludes from coverage "a motor home used for a purpose other than recreational use," although it does not define the term "recreational use." *Id.* Defendants argue that the Plaintiffs intended to use the RV as a permanent residence and that doing so goes beyond the scope of "recreational use." Plaintiffs do not argue that actual use of the RV as a permanent residence would go beyond "recreational use;" instead, they argue that their actual use of the RV over the approximately 12 months they owned it still constitutes "recreational use" and their subjective intent to use the RV as a residence at a future date is irrelevant.

Under Pennsylvania law, a contract is ambiguous when "it is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one and is obscure in meaning through indefiniteness of expression or has a double meaning." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 614 (3d Cir. 1995) (quoting *Samuel Rappaport Family P'ship v. Meridian Bank*, 657 A.2d 17, 21-22 (1995)). If a court determines that a contract is ambiguous, then "a decision as to which of the competing interpretations of the contract is the correct one is reserved for the factfinder, who would examine the content of the extrinsic evidence (along with all the other evidence) in order to make

this determination." *Phila. Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 188 (3d Cir. 2016) (citing *Bohler–Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 94 (3d Cir. 2001)). Initially, the court must determine if the term "recreational use" is capable of being understood in more than one sense.

The warranty itself does not define recreational use, and it does not limit the duration of recreational use or the length of a single trip. Plaintiffs have submitted advertisements by Defendant that markets the RV for "extended stays" and for use for an unquantified number of days in a year. (See Doc. 81, Ex. 2, "Winnebago Four Simple Questions Brochure," at p. 2 (the "Brochure").) According to the Brochure, Defendant's vehicles offer several features that imply that the purpose of the RV is to make extended trips using the RV as a mobile residence: up to 160 cubic feet in exterior storage, a kitchen pantry, kitchen cabinets, appliances, and household amenities such as bedrooms with closets and king sized beds, bathrooms with large showers and double vanities, a fireplace, a full kitchen, sofas and chairs, a dining table, and other features. The brochure provides that the vehicles are tested to withstand 40,000 miles per week, and that Defendant has 200 authorized dealers nationwide who are certified to repair and service the vehicles. Plaintiffs additionally cite to an advertisement by Defendant involving a family who made a 10-month extended trip across the United States in their RV. (*Id.* at Ex. 6.) Defendants have presented no evidence that would indicate that the term

"recreational use" in the context of the RV does not extend to a months-long trip across the country, and the marketing materials and design of the RV indicate that its purpose was for extended habitation while travelling. Thus, the context of the term "recreational use" implies that it encompasses long distance travel and extended periods of time where the owners use the RV as a mobile residence. What is unclear, however, is whether Plaintiff's stay was so lengthy that it exceeded the intended use of the RV.

Plaintiffs' assert that they intended to take an initial extended 12-month trip across the country with their dogs. (Doc. 82, Ex. 2, ¶ 3.) Prior to departing on their extended trip, they sold their house, Ms. Hanreck quit her job, and they established residency in Florida. Aff. H. Hanreck (Exhibit 2). They camped and travelled while they were allegedly in the search of a new "home base." *Id.* None of the facts presented show that the Plaintiffs clearly exceeded the bounds of the warranty definition of "recreational use." On the one hand, Plaintiffs had no other permanent residence; yet Plaintiffs have plausibly asserted that they chose the timing of this trip specifically because they intended to seek an alternative domicile and were attempting to avoid paying for a house that they would not reside in while they travelled the country. Plaintiffs' trip extended for approximately 12 months,[5] but

---

[5] It is worth noting that the Plaintiffs' actual travel time was less than 12 months because the RV was at various authorized dealers for repair for as many as 62 days. (Hanreck Dep.)

there is no indication that Defendant's warranty placed any express temporal limits on travel and a 12-month trip is not obviously longer than the RV's intended purpose. Defendant in fact appears to have expressly endorsed trips lasting up to 10 months. Of course, if the Plaintiffs had been on the road for two or three years, it would be easier to conclude that they had little intention to "put down roots," yet their conduct here falls into a grey area between recreational and residential use. Lacking a factual basis to establish that Plaintiffs use of the RV extended beyond recreation use, Defendant's place great weight on their representations of subjective intent to do so. Thus, the court will examine Plaintiffs' initial representations that they intended to use the RV as a permanent residence.

Defendants cite to two statements made by Plaintiffs: (1) Ms. Hanreck's statement that she understood that "recreational use" did not include use of the RV as a primary residence; and (2) her statement that they did intend to use the RV as a permanent residence. (*See* Doc. 81, Ex. C, p. 24.) Under Defendant's construction of the warranty, a purchaser could void the warranty the day of purchase by simply stating the words "this vehicle is now my place of residence." (See Doc. 30, p. 10 ("As the Plaintiffs admittedly used the [RV] as their primary residence, and not exclusively for recreational use as early as May 20, 2015 [less than one month after receipt of the RV], there cannot be any warranty contract-based dispute as a matter of law.") Such an interpretation is certainly not the definitive interpretation of the

warranty language and is not apparent from the contract itself or any extrinsic evidence presented. Although the Plaintiffs may have stated that they had considered using the RV as their residence and understood that using the RV as a permanent residence exceeded the terms of the warranty, there is no factual support that their actual usage of the RV extended beyond its intended use as a recreational vehicle. At minimum, this raises a factual issue as to whether the Plaintiffs use of the RV to travel the United States for approximately 10-12 months exceeded its intended use as a recreational vehicle. Accordingly, the court finds that the warranty language is ambiguous and there is a factual issue as to whether Plaintiffs conduct exceed the bounds of "recreational use."

### C. Magnuson Moss Warranty Act Claims

Defendant next argues that the MMWA is inapplicable to the claims raised under either the express or implied warranties. As discussed in part above, the MMWA does not create a new claim, but provides additional federal remedies for certain types of warranties. Defendant cites numerous cases from jurisdictions other than Pennsylvania or New York. A close reading of the cases cited by Defendant shows that none of those courts actually dismissed the MMWA claims because the warranties were "limited" as Defendant argues. A more accurate statement of those holdings is that the courts held that a plaintiff cannot recover more damages under the MMWA than he or she could under the applicable state law warranty claims if

the warranty does not meet the criteria for a "full" warranty under the MMWA. *See In re Rust-Oleum Restore Mktg., Sales Practices & Prod. Liab. Litig.*, 155 F. Supp. 3d 772, 797 (N.D. Ill. 2016) (explaining that "the MMWA allows consumers to enforce limited written and implied warranties in federal court, as provided in section 2310(d)(1), borrowing state law causes of action" (internal quotations and alternations omitted)); *see also Milicevic v. Fletcher Jones Imports, Ltd.*, 402 F.3d 912, 918 (9th Cir. 2005). ("Thus, it is clear from the statutory language that the [MMWA] creates a private cause of action for a warrantor's failure to comply with the terms of a written warranty, and none of the cases cited by [the defendants] support a contrary position. Finally, in this regard, whether the written warranty is full or limited makes no difference. Although the [MMWA] distinguishes between full and limited warranties, it nonetheless refers to each as a written warranty. 15 U.S.C. § 2303(a)(1)-(2)."). This court agrees with the interpretation expressly made by the Ninth Circuit and implied in each other case cited by the parties: that the MMWA supports a claim arising from both limited and full warranties, but applies its expansive remedial scheme only to full warranties.

Plaintiffs, in their brief in opposition to summary judgment, go beyond the arguments raised by Defendant. Plaintiffs suggest that the MMWA provides for "equitable relief" that can include rescission of the contract. Although some courts have agreed with this position, it is unsettled, particularly within Pennsylvania and

the Third Circuit. Even in jurisdictions where courts have allowed such an equitable remedy, other courts have questioned this approach. *Compare Jones v. Fleetwood Motor Homes*, No. 98 C 3061, 1999 WL 999784 (N.D. Ill. October 29, 1999) *and Hamdan v. Land Rover N. Am., Inc.*, No. 03-cv-2051, 2003 WL 21911244 (N.D. Ill. August 8, 2003) *with Mydlach v. DaimlerChrysler Corp.*, 875 N.E.2d 1047, 1064 (Ill. 2007) ("We remain unpersuaded, however, that simply because the [MMWA] allows an action for equitable relief, revocation must be available for all breaches of warranty, irrespective of the status of the defendant or the relationship between the parties. Rather, we agree . . . that revocation of acceptance is "conceptually inapplicable" to a nonseller."); *see also* 12 Reasons to Love the Magnuson-Moss Warranty Act, 11 J. Consumer & Com. L. 127, 130 (2008) (comparing *Hamdan* with *Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028 (D. Haw. 2006) (revocation not available against remote manufacturer without privity) and *Chaurasia v. Gen. Motors Corp.*, 126 P.3d 165 (Ariz. Ct. App. 2006) ([MMWA]'s authorization of equitable relief does not, in the absence of privity, allow consumer to revoke acceptance against manufacturer)). Other courts have expressly held that under the MMWA, the remedy of recession applies only to full warranties. *Id.* (citing *Holmes v. Kabco Builders, Inc.*, 62 U.C.C. Rep. Serv. 2d 239, 244 n.7 (S.D. Ala. 2007); *Traynor v. Winnebago Indus., Inc.*, 2006 WL 778703 (D. Ariz. Mar. 27, 2006)); *Long v. Monaco Coach Corp.*, No. 04-cv-203, 2006 WL

2564040, *5 (E.D. Tenn. Aug. 31, 2006) ("because the warranty in issue is not a "full" warranty but a "limited" warranty and because there is no privity of contract between the [parties], the [plaintiffs'] request for revocation of acceptance relief is not a remedy available to them under the MMWA.").

Plainly stated, Section 2304 of the MMWA applies only to written, full warranties and expressly allows for "a refund or replacement without charge," while Section 2310 applies to all "written warranties," but only provides that a consumer "may bring suit for damages and other legal and equitable relief." Consistent with other holdings concluding that, where the MMWA is silent, state warranty law applies,[6] this court concludes that the reference to "damages and other legal and equitable relief" means those damages and equitable remedies that would be available under the applicable state law. Defendants have cited no authority that would preclude a refund or replacement of the RV, but neither Plaintiffs nor the court have found a case in Pennsylvania that granted the remedy of revocation or recession based on a manufacturer's warranty. *See* Curtis R. Reitz, Manufacturers' Warranties of Consumer Goods, 75 Wash. U. L.Q. 357, 396 (1997) ("It is incoherent to use "revocation of acceptance" in connection with remedies for breach of a

---

[6] *See Gusse*, 470 F. Supp. 2d at 1117 (citing *Milicevic*, 402 F. 3d at 919 n.4); *see also Vullings v. Bryant Heating & Cooling Sys.*, No. 18-cv-3317, 2019 WL 687881, *2 (E.D. Pa. Feb. 19, 2019) ("[The MMWA] does not contain a statute of limitations, so courts apply the most analogous state law period").

manufacturer's warranty to a remote buyer. Without regard to acceptance and revocation of acceptance, however, there may well be breaches of manufacturers' warranties that, under common-law remedial principles, justify a measure of damages that includes the full amount of the retail price paid."). It appears that, in this context, "equitable relief" may encompass refund or reimbursement rather than "revocation or recession" because the dealer that sold the RV is not a party to this action. Thus, it remains a question for the jury as to whether Defendant's alleged delay in repairing the RV so "failed its essential purpose" as to justify equitable relief in the form of refund or replacement under the UCC, *see Woolums*, 530 F. Supp. 2d at 701 ("Whether a limited warranty has failed its essential purpose is a question of fact for the jury."), but it does not appear that revocation or recession of the sale would be available in this case.

### D. State Law Warranty Claims

#### i. *Express Warranty*

Plaintiffs argue that Defendant breached the express warranty given to them at the time they purchased the RV. Under Pennsylvania law, in order to prove breach of an express warranty, a plaintiff must show that an express warranty existed, that a breach of the warranty occurred, and that the breach was the proximate cause of the specific damages. *Giacalone v. Lacrimedics, Inc.*, No. 07-cv-2212, 2008 WL 11365183, *6 (E.D. Pa. Nov. 24, 2008) (citing *Price v. Chevrolet Motor Div. of Gen.*

*Motors Corp.*, 765 A.2d 800, 809 (Pa. Super. Ct. 2000)). Here, the parties do not dispute that an express warranty existed. Defendant, however, argues that the terms of the contract excluded the damages Plaintiffs seek or that Plaintiffs voided their warranty by failing to conform to the terms of the warranty.

In pertinent part, the warranty provides: "[Defendant] promises that any part of this motor home . . . found to be defective in material or workmanship shall be repaired or replaced at no cost to the owner for parts, material, or labor so long as the motor home has been used exclusively for recreational purposes and maintained as recommended." (Doc. 37, Ex. C, p. 160.) The warranty prescribes a specific method of obtaining repairs or replacements: "to obtain warranty repairs, you must, at your own cost, present your motor home to an authorized [Defendant] service facility during normal business hours and provide a written list of items to be inspected or repaired to the service facility and [Defendant]." (*Id.*) The warranty also requires that, if a service facility is unable to satisfactorily perform the repairs, the owner must present the motor home to one of Defendant's factories for repair directly by Defendant. Additionally, the warranty contains a limitation on remedies clause which, in essence, limits the amount a plaintiff can recover for a breach of the warranty to "money damages in an amount equal to the reasonable cost for material and labor necessary to repair or replace parts that should have been done under th[e Warranty], but were not." (Doc. 37, Ex. C.)

The parties do not dispute the facial validity of the limitation of damages provision or that Plaintiffs failed to follow the required procedure for factory repairs in April of 2016 when they cancelled their scheduled repair at Defendant's factory. (*See* Doc. 38, Ex. M; Ex. C, p. 98.)  Instead, Plaintiffs argue that, because of the numerous and repeated repairs needed during their year-long trip, the warranty failed of its essential purpose such that the limitation provision is invalidated under Pennsylvania law. *See Woolums*, 530 F. Supp. 2d at 700-701 (citing *Strickler*, 2005 WL 1266674, at *4); *see also Hornberger v. Gen. Motors Corp.*, 929 F. Supp. 884, 890 (E.D. Pa. 1996) (finding that a buyer may "pursue remedies under the [UCC] where the exclusive remedy provided in the contract 'fails of its essential purpose.'") (citing 13 Pa.C.S. § 2719(b)).  "A remedy fails of its essential purpose where it deprives either party of the substantial value of the bargain." *Earl Brace & Sons v. Ciba–Geigy Corp.*, 708 F. Supp. 708, 710 (W.D. Pa.1989).[7]

Plaintiffs cite to a laundry list of repairs that were performed at various service centers over the course of their travels in the RV: auto shade malfunctions, battery charging issue, drivers side slide seal, generator, shade wires, hall monitor light,

---

[7] Plaintiffs do not address Defendant's argument that warranty coverage was waived when the Plaintiffs cancelled their scheduled factory repair.  In *Woolums*, the court excluded damages that were never reported to the manufacturer under the warranty and, thus, were not given an opportunity to be repaired.  In contrast, here, the repairs sought at the factory had previously been addressed at service centers but were not adequately addressed by those repairs.  Accordingly, Plaintiffs may only rely upon evidence of those repairs scheduled for a factory repair to the extent they support a claim that the repairs were not timely completed prior to the scheduled factory repair.

slide operation, entertainment system not working, shower leak, inverter not working, rust under camper, "auto jack" light broken, battery latch, backup camera, installed satellite, chassis and house battery wiring, stove burner not working, tow kit installation, steps not retracting, slide topper ripped and worn, corroded water pump, brakes skipping and smoking, engine squeaking, chair adjustment broken, cap on bedroom slide, dinette slide creaking, tank sensors stuck, foot rest broken, light fixture flickers, heat and AC, outside TV and "video transfer box" not working, blue ox tow kit breaks, water leak, and transfer box. (Doc. 81, Ex. 2; 10-20.) At least some of these issues were not fully repaired or, according to Plaintiffs' expert witness, were not repaired within a reasonable period of time. (Doc. 81, Exs. 1, 2.) Plaintiffs argue that the total number of repairs, the repairs that failed to correct the issues, and the unreasonable amount of time it took to make the repairs that were completed amounts to a breach of the express warranty.

In *Woolums*, the court denied summary judgment on a similar issue, finding that certain defects that the plaintiffs presented to National RV for repair were rejected or incorrectly repaired and that, taken together, the numerous recurring failures and needs for repair raised an issue of fact as to whether the totality of the equipment failures constituted a failure of the warranty's essential purpose. Attempting to distinguish *Woolums*, Defendant cites *Pidcock v. Ewing*, 435 F. Supp. 2d 657 (E.D. Mich. 2006) for the proposition that "[t]he fact that the motor home

was previously serviced is not enough to establish a breach of [an] express warranty. *Pidcock*, 435 F. Supp. 2d at 663 (citing *Ducharme v. A & S RV Ctr.*, 321 F. Supp. 2d 843, 850-51 (E.D. Mich. 2004) (observing that (1) "the fact that the motor home was previously repaired does not establish a breach of an express warranty", (2) some service on a complex product like a motor home is inevitable, and (3) there is no breach when the manufacturer is willing to repair an existing problem under the warranty), *aff'd*, 127 Fed. App'x 204 (6th Cir. 2005)).  Both *Pidcock* and *Ducharme*, however, apply Michigan case law that prohibits an aggregation of repair time over the lifetime of the warranty.  *See Pidcock*, 435 F. Supp. 2d at 663 (citing *Comput. Network, Inc. v. AM Gen. Corp.*, 696 N.W. 2d 49, 55 (Mich. App. 2005) ("There were numerous different repairs to the vehicle over a lengthy period, most of which were not repeat repairs.  Plaintiff relies on the aggregate number of repair days to argue that there is a question of fact whether the time for repairs was unreasonable.  However, it offers no evidence that the time to perform the numerous, individual repairs was unreasonable for this specific vehicle.")).  Initially, the instant case is distinguishable from the Michigan cases because there is evidence of the need for repeat repairs for the same issue.  Moreover, Defendant cites no Pennsylvania case law that supports the theory that a plaintiff is prohibited from aggregating time that the vehicle was out of service over the life of the warranty.  In fact, this appears to be the exact reasoning relied upon by the *Woolums* court in finding an issue of fact

arose as to whether the warranty failed of its essential purpose. Although the Pennsylvania Lemon Law is inapplicable here—motor homes are expressly excluded, 73 P.S. § 1952—the Lemon Law provides that a manufacturer shall be given a reasonable number of attempts to repair defects and presumes that a reasonable number of attempts shall not exceed 30 calendar days. 73 P.S. § 1956. The RV appears to have been in the shop for repairs approximately 31 days, not including the time between purchase and initial delivery or after Plaintiffs declined the factory repair.

Defendant does not argue that any of the repairs were not covered by the warranty and, as noted above, there are several repairs that may have been inadequately performed over the lifetime of the warranty. Because the number of attempted repairs and the continued need for repeated repairs of the same issue, the court finds that Plaintiffs have raised a genuine issue of material fact as to whether the total number of repairs constitutes a breach of the express warranty and a failure of its essential purpose. Accordingly, Defendant's motion for summary judgment as to the express warranty claim will be denied.

## ii.    *Implied Warranty*

Plaintiffs claim that Defendant breached its implied warranty of merchantability because the RV was unfit for its intended purpose and required repeated repairs. As noted above, the Pennsylvania Supreme Court has abolished

the requirement that the plaintiff be in privity of contract with the manufacturer in order to bring a claim. *Hull v. Fleetwood Enters., Inc.*, No. 06-cv-1669, 2007 WL 917088, *3 (W.D. Pa. Mar. 21, 2007), *on reh'g*, No. 06-cv-1669, 2008 WL 519608 (W.D. Pa. Feb. 25, 2008) (*citing Goodman v. PPG Indus.*, 849 A.2d 1239 (Pa. Super. Ct. 2004)). However, because New York law applies to Plaintiffs' implied warranty claim and it is uncontested that New York still holds fast to the requirement of privity in implied warranty cases, there is little question that Plaintiffs implied warranty claims should be dismissed. *Haag v. Hyundai Motor Am.*, 969 F. Supp. 2d 313 (W.D. N.Y. 2013); *Lexow & Jenkins, P.C. v. Hertz Comm. Leasing Corp.*, 122 A.D. 2d 25, 26 (N.Y. App. Div. 1986). Because Plaintiffs purchased the RV from a third-party seller, they lack privity with Defendant and, thus, summary judgment is proper as to their implied warranty claim under state law and the MMWA.

## E. Consumer Protection Laws

Plaintiffs plead alternatively under both the New York Consumer Protection Law and Pennsylvania's UTPCPL, 73 Pa. C.S. § 201 *et seq.* Because Pennsylvania law applies, the court need only address Defendant's argument that Plaintiff fails to prove all the required elements of a claim under the UTPCPL. The UTPCPL grants a private right of action to consumers harmed by deceptive business practices. 73 Pa. C.S. § 201-9.2(a). The purpose of the UTPCPL is to deter "unfair and deceptive business practices." *Commonwealth v. Monumental Props.*, 329 A.2d 812, 815-17

(Pa. 1974). The statute's "underlying foundation is fraud prevention," and its strategy is to place the consumer and the seller on more equal terms. *Id.* at 816. Because the law is remedial in nature, courts should construe its provisions liberally. *Id.* at 816-17.

In order to maintain a private right of action under the UTPCPL, Plaintiffs must demonstrate that they:

> 1) purchased or leased goods or services primarily for a personal, family, or household purpose; 2) suffered an ascertainable loss of money or property; and 3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL. 73 P.S. § 201-9.2(a). The plaintiff must offer evidence of one of the statutorily delineated "unfair methods of competition" found at 73 P.S. § 201-2(4), or evidence which fits the "catch-all provision" found at 73 P.S. § 201-2(4)(xxi).

*Baynes v. George E. Mason Funeral Home, Inc.*, No. 09-cv-153, 2011 WL 2181469, *4 (W.D. Pa. June 2, 2011). [8]

Plaintiffs allege that Defendant violated the UTPCPL by committing the following "[u]nfair methods of competition" and "unfair or deceptive acts or practices":

> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not

---

[8] Defendant also argues that Plaintiffs should be precluded from seeking redress under the UTPCPL because they are not residents of Pennsylvania and the only activities "touching" on the Commonwealth were the repairs conducted at the Camping World in Harrisburg. (Doc. 38, p. 27.) Defendant, however, cites no precedent or statutory language that would imply a minimum number of contacts with the Commonwealth in order to trigger the protections of the statute. Accordingly, this court rejects Defendant's argument that Plaintiffs may not invoke the UTPCPL based solely on their limited activities in Pennsylvania.

have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;

. . .

(vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;

. . .

(ix) Advertising goods or services with intent not to sell them as advertised;

. . .

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

. . .

(xvi) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;

. . .

(xxi) Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 P.S. § 201-2(4). Plaintiffs first argue that a breach of written warranty can be an unfair or deceptive act under the UTPCPL. *See Woolums*, 530 F. Supp. 2d at 703 (citing § 201-2(4)(xiv); *see also Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 647 (Pa. Super. 1999) (reversing trial court's grant of summary judgment to defendant automobile manufacturer on plaintiff's UTPCPL claim for breach of repair-or-replace warranty because plaintiff repeatedly returned vehicle for the same recurring problem)). Plaintiffs also allege that Defendant misrepresented the quality, characteristics, and capabilities of the RV, which led to confusion and misunderstanding, and induced Plaintiffs to purchase the RV.

### i. Economic Loss Doctrine

Rather than raising challenges to Plaintiffs' claims that Defendant's conduct violated the UTPCPL, Defendant argues that Plaintiffs are precluded from recovery under the UTPCPL by the economic loss doctrine. In short, the economic loss doctrine bars a plaintiff from recovering tort damages for economic losses stemming solely from a breach of contract. *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002). It prohibits claims "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *McGuckin v. Allstate Fire & Cas. Ins. Co.*, 118 F.Supp.3d 716, 720 (E.D. Pa. 2015) (internal quotations omitted). Defendant argues that Plaintiffs' claims must fail because they seek only to recover the lost benefit of their bargain under the contract for sale and the Warranty. (Doc. 28, p. 26-27 (citing *Dusquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F. 3d 604, 618 (3d Cir. 1995).)

The applicability of the economic loss doctrine in the Third Circuit has been a hotly debated question in the last several years. Initially, in *Werwinski*, the Third Circuit predicted that the Pennsylvania Supreme Court would conclude that UTPCPL claims would be barred by the economic loss doctrine, comparing such

claims to the "gist of the action" doctrine applied in Pennsylvania Courts. The Third Circuit's prediction, however, was contradicted by the Pennsylvania Superior Court on two separate occasions. *See Dixon v. Nw. Mut.*, 146 A.3d 780, 790 (Pa. Super. Ct. 2016); *Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa. Super. Ct. 2013). Since then, over a dozen decisions by various district courts throughout the Third Circuit have reached contradictory holdings over whether *Werwinski* remains controlling. *See McDonough v. State Farm Fire & Cas. Co.*, 18-cv-02247, 2019 WL 480139, *5 (E.D. Pa. Feb. 7, 2019) (collecting cases). "Courts within the Third Circuit are bound by previous holdings of the Circuit on matters of state law, absent 'a *clear* statement by the Pennsylvania Supreme Court to the contrary or other persuasive evidence of a change in Pennsylvania law.'" *Powell v. Saint Joseph's Univ.*, 17-cv-4438, 2018 WL 994478, *9 (E.D. Pa. Feb. 20, 2018) (quoting *Smith v. Calgon Carbon Corp.*, 917 F.2d 1338, 1343 (3d Cir. 1990) (emphasis in original)) (citing *Debiec v. Cabot Corp.*, 352 F.3d 117, 131 (3d Cir. 2003) (ruling that a previous holding by the Circuit is "binding . . . notwithstanding the contradictory Pennsylvania Superior Court opinions on th[e] issue")). Although *Powell* concluded that *Knight*, standing alone, did not amount to "persuasive evidence of a change in Pennsylvania law," it does not appear to have considered *Dixon*, which follows *Knight* and recognizes the contradiction between substantive law applied in state and federal courts on this issue. *Dixon v. Nw. Mut.*, 146 A.3d at 790 n.12. Although

this court agrees with *Powell* that the Court in *Knight* did not perform an in-depth analysis of the law, this court is not tasked with critiquing the thoroughness of an intermediate state court's decision-making. Instead, it appears that *Knight* is the controlling state law on this issue and has been for approximately six years. It has not been contravened or questioned by any subsequent holding of another intermediate panel or *en banc* sitting of the Superior Court and has been followed as the law of the land in Pennsylvania. The court finds that this is sufficiently persuasive of a change in the law. Accordingly, Defendant's argument that the economic loss doctrine bars Plaintiff's claims is unavailing.[9]

> ii. *UTPCPL Claim*

Having concluded that Plaintiffs' claims are not barred by the economic loss doctrine, the court will examine the substantive allegations of violations under the UTPCPL. Plaintiffs argue that the following conduct constitutes unfair or deceptive trade practices:

> Defendant represented that the vehicle had performance, characteristics, accessories, uses, or benefits it did not have; Defendant represented the vehicle as a particular standard of quality or grade when it was not; Defendant represented it was able to deliver or complete the transaction when it knew it could not, represented the defects were repaired when they were not; solicited Plaintiffs to enter into

---

[9] Moreover, even had the economic loss doctrine applied here, Plaintiffs claims would only be partially dismissed on those grounds because Plaintiff's claims under the UTPCPL raise deceptive practices outside the four corners of the warranty.

oppressively harsh or one-sided contract and made false and misleading advertising, all address misrepresentation and/or false advertising.

(Doc. 81, p. 36 (citing Doc. 1, ¶39).) Essentially, it appears that Plaintiffs state that Defendant represented that the RV was in approximately new condition and was suitable for a long-term trip across the United States, when, in fact, the RV was sold to Plaintiffs with numerous defects and inadequacies that caused them to seek repeated repairs and that the RV was not capable of sustaining an approximately year-long trip as represented. Furthermore, Plaintiffs note that the repeated repairs were inadequate where Defendant had promised that they would correct the problems raised by Plaintiffs. The expert reports presented by Plaintiffs support their argument that the RV was not up to the promised quality, and the emails from Defendant's representatives at least support a conclusion that Defendant promised to rectify these mistakes, yet fell short of that promise. This claim dovetails with Defendant's argument that Plaintiffs voided the warranty by using the RV beyond "recreational use." As with that argument, whether Defendants represented that the RV was capable of performing a trip of this length and whether Plaintiffs exceeded "recreational use" by embarking on such a trip is a question for the jury. Defendant raises no argument to contradict the substantive claims raised by Plaintiffs and the court finds that they have raised legitimate issues of fact as to whether Defendant violated the UTPCPL. Accordingly, the court will deny Defendant's motion for summary judgment as to Plaintiffs claims under the UTPCPL.

## IV. Motions *in Limine*

### A. Cross-Motions Regarding Admission of Felony Conviction

Plaintiffs have retained Thomas Bailey ("Bailey") as an expert witness in this matter and he and he has rendered opinions on both the RV's defects and its value. (Doc. 40, Exs. A, B.) During the course of deposing Bailey, Defendant learned that he had previously been convicted of felony crimes. (*Id.* at 5, (citing Doc. 39, Ex. E, p. 112-113).) Defendant does not present direct evidence of Bailey's conviction, but instead cites to testimony Bailey gave in an unrelated case wherein he stated that he was convicted of a felony involving ten counts of mail fraud and perjury/misrepresentation to a Grand Jury. Bailey stated that he was convicted in 1994 and served a term of approximately 38-40 months. He further stated that he was not "in the RV business" from 1990-1994. While being deposed in the instant case, Bailey testified that he did not recall the exact crimes that he had previously been convicted of. Plaintiffs shed more light on Bailey's past conviction, stating that, between 1986 and 1990, he was the owner and operator of a federally licensed firearms dealer for law enforcement. (Doc. 52, p. 2.) Plaintiffs argue that the convictions should be excluded under the general rule that convictions over 10 years old should be inadmissible because Bailey's prior convictions have no relation to the

instant case and his reliability as a witness has not been questioned in the nearly 25 years since his convictions.[10]

Defendant concedes that Federal Rule of Evidence 609(b) typically excludes evidence of felony convictions more than 10 years old, but argues that "the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect," and, thus, justifies admission of the convictions in this case. Under Rule 609, which governs the use of convictions as evidence of truthfulness for impeachment purposes, a conviction more than 10 years old may not be admitted unless "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b)(1); *United States v. Shannon*, 766 F.3d 346, 352 n.9 (3d Cir. 2014). "The Advisory Committee Notes for Rule 609(b) emphasize that convictions over 10 years old will be admitted very rarely and only in exceptional circumstances." *Id.* (citation omitted). Applying this standard, Defendant has adduced no "exceptional circumstances" that would justify deviating from the general rule in this case. The only support for its position offered by Defendant is Bailey's alleged "evasiveness"

---

[10] Defendant styled its motion *in limine* as a motion "Seeking Admission of the Felony Conviction," while Plaintiffs filed a motion titled "Motion *in Limine* to Exclude Evidence of [Bailey's] Criminal Convictions." Plaintiffs contend that Defendant's position is improper for a motion *in limine* and should be dismissed summarily. Because the parties have filed largely duplicative motions, the court need not address whether Defendant's is "improper;" the analysis under Rule 609 is identical regardless of the motion *in limine's* title.

when asked about his prior convictions.  Bailey did not lie about his convictions or refuse to answer questions about them.  Instead, he merely stated that he could not remember the specific crimes, but that they were related to "firearms violations." Although that is an incomplete summary of the charges, it is not so disingenuous as to amount to the exceptional circumstances necessary to justify admission of stale offenses.  In contrast, Plaintiffs cite to the general age of the convictions, the fact that the crimes were unrelated to Bailey's current occupation, and evidence of his rehabilitation such as letters of commendation for his efforts in assisting police in fraud investigations. (*See, e.g.*, Doc. 51-3.)  Accordingly, the court finds that Defendant has failed to adduce evidence that would overcome Rule 609's preclusion of convictions more than ten years old and will grant Plaintiffs' motion *in limine* to exclude evidence of Bailey's convictions.

### B. Cross Motions to Preclude Expert Testimony

#### i.     *Defendant's Challenge to Plaintiffs' Expert*

Defendant presents a motion to preclude Bailey's testimony entirely because he fails to meet the criteria for admission as an expert witness.  The admissibility of expert testimony is governed, in part, by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) The testimony is based on sufficient facts or data;

(c) The testimony is the product of reliable principles and methods; and

(d) The expert has reliably applied the principles and methods to the facts of the case.

The District Court has broad discretion in determining the admissibility of particular expert testimony. *See Walker v. Gordon*, 46 F. App'x 691, 694 (3d Cir. 2002) (citing *Kumho Tire v. Carmichael*, 526 U.S. 137, 152-53 (1999)). The Third Circuit has set forth three criteria to determine whether a proposed witness may qualify as an expert: qualification, reliability, and fit. *Schneider v. Fried*, 320 F.3d 396, 405 (3d Cir.2003). Doubts about admissibility should be resolved in favor of admission. *Giorgini v. Ford Motor Co.*, No. 06-cv-968, 2008 WL 859230, *5 (E.D. Pa. Mar. 28, 2008).

Defendant raises the following challenges to Bailey's qualifications: (1) he has not had any classroom education or training on defect investigation or appraisal; (2) he has not relied on any industry writing, publication, or treatise on the issues raised; (3) he has no particular training on the specific product at issue here; and (4) his opinions are largely based on his own experience rather than formal training. Defendant's attacks on Bailey's qualifications are unpersuasive. Although Plaintiffs admit that he largely has little formal training, there is no stringent requirement that

all expert knowledge must be obtained through formal training. Indeed, Plaintiffs cite to Bailey's decades of personal experience purchasing, selling, and inspecting RVs. (Doc. 61, Exs. 1A, 4.) Defendant does not direct this court to any authoritative publications that Bailey should have relied upon and, in fact, it appears that Defendants' own expert similarly rests his opinion predominantly on personal experience rather than formal publications. Accordingly, the court finds that Bailey meets the "qualifications" prong of the *Schneider* test.

Defendant additionally attacks Bailey's reliability as an expert, arguing that his methods and procedures are based on "subjective belief or unsupported speculation," rather than "the methods and procedures of science." *In re Paoli R.R. Yard PCB Litig*, 35 F.3d 717, 742 (3d Cir. 1994). Bailey, however, outlines his inspection and valuation methodology in his reports. (*See, e.g.*, Doc. 62, Exs. 1C, 1D.)[11] Obviously, a portion of the methodology is subjective to the extent that it is based on Bailey's personal observations; however, this criterion is part and parcel of the qualifications factor; Bailey's prior experience in the industry qualifies him to make such visual assessments. Other courts, cited by Plaintiffs, have expressly approved of visual inspections used to identify mechanical issues. *Johnson v. Thor*

---

[11] By way of example, factors employed in his diminished value report include: "1. Service records reviewed if available or applicable; 2. Personal inspection of overall condition; 3. Consideration of floor plan; 4. Type of vehicle; 5. Estimated or actual mileage on RV; 6. Options-non-forced; 7. Evidence or prior or existing damage. . ." (Doc. 62, Ex. 1D.)

*Motor Coach, Inc.*, 15-cv-85-OC-30PRL, 2016 WL 1182792, *4 (M.D. Fla. Mar. 28, 2016) ("A mechanic's visual inspection may be an acceptable way to identify a defect. In fact, Thor's expert[], Enoch Hutchcraft ["Hutchcraft"][12] . . ., performed visual inspections to determine whether the slide-out room suffered from a defect."). Accordingly, the court finds that Bailey meets the "reliability" prong of the *Schneider* test.

Finally, Defendant challenges the "fit" prong of the test, arguing that Bailey's report supplants the role of the jury because of its conclusory nature rather than "assist[ing] the trier of fact." *Paoli*, 35 F.3d at 742. Defendant does not explain how Bailey's expert report differs from any expert report in terms of assisting the trier of fact. Defendant does not argue that it is irrelevant to the issues of diminished value or faulty repairs; instead, Defendant seems to rehash its arguments as to the "qualifications" and "reliability" prongs. The court finds that Bailey's opinion is relevant, but reminds Defendant that it has the opportunity to "[v]igorous[ly] cross-examin[e Bailey], [and] present[] contrary evidence[] and careful instruction on the burden of proof [which are] the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596, (1993).

---

[12] It is worth noting that the expert in *Thor* is the expert currently employed by Defendant.

*ii.    Plaintiffs' Challenge to Certain Opinions of Defendant's Expert*

In contrast to Defendant's argument that their witness is completely disqualified as an expert, Plaintiffs challenge only five discrete portions of Defendant's expert, Enoch Hutchcraft ("Hutchcraft"), opinion:

(1) Opinions relating to the slide-outs;

(2) Opinions relating to warranty analysis and coverage;

(3) Opinions relating to the water tank;

(4) Opinions as to whether the warranty was breached; and

(5) The history of Rvs and "new owner operation".

(Doc. 49, pp. 1-2.)  Plaintiffs' argument related to the slide-outs and the water tank are identical.  In both instances, they argue that Hutchcraft admitted in his opinion that he did not inspect either the slide-out or the water tank, and, thus, he should not be permitted to speculate as to any alleged defects.  Hutchcraft admits in his deposition that he did not attempt to operate the slide-out or inspect the water tank. (Doc. 59, Exs. B, D.)  He does, however, state that he bases his analysis on the repair orders issued by the service centers and a visual inspection of the slide-out without actually operating the slide-out mechanism.  (*Id.*)  Although the court concludes that this is a sufficient basis to support his opinion on the slide-out and water tank, Plaintiffs are free to attack Hutchcraft's credibility by inquiring as to why he failed to perform visual inspections and operations of those portions of the RV.  *See Daubert*, 509 U.S. at 596.  Plaintiffs additionally argue that Hutchcraft should be

precluded from testifying that certain faults in the RV may be related to "user error" common among new RV owners. The court disagrees. Hutchcraft's experience may have demonstrated to him that certain complications are typically due to user error. Hutchcraft does not definitively state that Plaintiffs caused any damage due to user error, but he may offer his opinion that certain complications present in the RV are typical of those caused by new RV users.

Lastly, Plaintiffs seek to preclude Hutchcraft from testifying as to legal conclusions such as warranty coverage and the ultimate issue of whether the warranty was breached. The court agrees that an expert may not present a legal conclusion or opinion. *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) (An "expert witness is prohibited from rendering a legal opinion.") Defendant does not contest that Hutchcraft may not opine as to whether the warranty was breached or otherwise interpret the language of the warranty. Accordingly, Plaintiffs motion *in limine* to preclude expert testimony is granted to the extent that it seeks to exclude Hutchcraft's testimony regarding the breach or interpretation of the warranty, but is denied in all other respects.

### C. Defendant's Motion to Preclude Video Inspection

In the course of his inspection, Bailey created a video recording of the RV. Defendant now seeks to preclude the admission of the videotape at trial. Defendant argues that the video should be excluded pursuant to Federal Rule of Evidence 403

because its "probative value is substantially outweighed by a danger of . . . misleading the jury." Fed. R. Evid. 403. In support of this argument, Defendant cites to *Fusco v. General Motors Corporation*, 11 F.3d 259 (3rd Cir. 1993). However, the instant case is readily distinguishable from *Fusco*. In *Fusco*, the defendant attempted to simulate the conditions of a car crash by using a test car on a simulation road course. The Third Circuit held that "[t]he concern lies not with use of tape or film ... but with the deliberate recreation of an event under staged conditions. Where that recreation could easily seem to resemble the actual occurrence, courts have feared that the jurors may be misled because they do not fully appreciate how variations in the surrounding conditions, as between the original occurrence and the staged event, can alter the outcome." *Id.* at 263-264. Here, the video taken by Bailey was essentially a visual tour of the RV at issue in this case and shows only the portions of the alleged damage that Bailey found relevant. Images of the alleged damages, whether photos or video, are obviously relevant to the issues in this case. Accordingly, Defendant's motion to exclude video evidence will be denied.[13]

---

[13] In its reply brief, Defendant states that they demand that "the motor home [be presented] at the time of trial." (Doc. 70, p. 3.) However, this single sentence in an otherwise unrelated motion is not sufficient to inform the court of this request. If Defendant desires that a visit to the RV be arranged for the jury, it should address such a request and the logistical concerns attendant thereto by separate motion.

## D. Plaintiffs' Motion to Omit Discussion of Certain Topics

Styled as a "motion *in limine* regarding improper motives," Plaintiffs seek to preclude Defendant from addressing three subjects during the course of the trial:

1. [Counsel's] history of representing consumers in lawsuits against recreational vehicle dealers and/or manufacturers;

2. Comments about "greedy lawyers" or similar comments implying that Plaintiffs or their attorneys are pursuing the claims for nefarious or unwholesome reasons (*i.e.*, attorney fees, excessive damages), or other derogatory comments on the motivation of Plaintiffs or their counsel in bringing this case;

3. Comments regarding Plaintiffs' attorney fees and the fee shifting nature of the [MMWA] and the applicable [UTPCPL] claims in this case.[14]

(Doc. 47, pp. 1-2.) Counsel for Plaintiffs asserts that, in their experience, numerous similarly situated defendants have attempted to discuss these "improper motives" in an effort to impugn the integrity of plaintiffs and counsel in consumer suits. (Doc. 48, p. 5.) Plaintiffs note that it is error to admit evidence of attorneys fees in a case on the merits. *See* Fed. R. Civ. P. 54(d)(2)(A); *Walker v. Astrue*, 593 F.3d 274, 279-

---

[14] Vexingly, Plaintiffs filed an additional "motion *in limine*" requesting that the court wait until the close of a trial on the merits to address the issues of attorneys fees and other special damages available under the MMWA or the UTPCPL. (Doc. 45.) The motion itself mentions only precluding the discussion of attorneys fees and the burden-shifting nature of the MMWA and UTPCPL at trial, yet this is redundant with point three of Plaintiffs' "improper motives" motion *in limine*. The brief in support of the motion, however, largely recites the procedural standard for an award of attorneys fees in cases where the court, rather than the jury, determines the propriety of special damages and fee awards. There is no indication that Defendant intended otherwise, and Defendant does not disagree that this is the proper method in this case. Although such a motion appears redundant and unnecessary, to the extent Plaintiffs request reassurance that the court will follow the proper procedure for considering a petition for attorneys fees following a trial on the merits, the court will grant the motion.

280 (3d Cir. 2010). It is also improper to make personal attacks on the character or motives of the opposing party, counsel, or witnesses during trial, aside from attempting to impeach the credibility of said witnesses through contradictory evidence. *See Comuso v. AMTRAK*, No. 97-cv-7891, 2000 U.S. Dist. LEXIS 5427, *10-11 (E.D. Pa. Apr. 25, 2000).

Addressing the first two points in Plaintiffs' motion, Defendant does not disagree that disparaging remarks are improper during trial; however, Defendant notes that it may have occasion to comment on the nature of Plaintiffs' counsel's work in the context of examining expert witnesses. Neither party seems to suggest that being an attorney that practices in the field of consumer protection is, in and of itself, disparaging. Accordingly, Defendant is naturally precluded from disparaging Plaintiffs or their counsel, *e.g.* implying that Plaintiffs are pursuing their claims for "unwholesome reasons" or that counsel is a "greedy lawyer" because of the nature of his practice, but shall not be barred entirely from mentioning the nature of counsel's work in the context of expert witness examination. (*See* Doc. 58, p. 5 ("Bailey has been retained by numerous consumers who have also retained [Counsel]. [Bailey's] bias is subject to robust inquiry at the time of trial and his relationship with Plaintiffs' counsel and other consumer[-]based litigators is a likely product of that inquiry.").)

Defendant admits that counsel fees and costs are generally not relevant at trial; however, Defendant disagrees that the jury should not be informed of the burden shifting nature of the MMWA and the UTPCPL. Defendant seems to suggest that it "would be irreparably prejudiced if fee shifting/consumer protection statutes cannot be explained in conjunction with the refusal of the last repair opportunity." (*Id.*) It is unclear in precisely what context Defendant would need to refer specifically to the burden-shifting framework of the MMWA or the UTPCPL and how doing so would not inappropriately suggest that Plaintiffs brought this suit for an improper motive. The court will defer judgment until the pretrial conference in this matter in order to ascertain the precise contours of Defendant's proposed discussion of "the fee shifting/consumer protection statutes . . . in conjunction with the refusal of the last repair opportunity." (*Id.*) Accordingly, the court will deny Plaintiffs' motion *in limine* on this issue without prejudice to renewal at the time of trial.

## V.     Conclusion

For the reasons set forth above, the court finds that New York law applies to Plaintiffs' claim for an implied warranty and Pennsylvania law applies to all other claims. Because New York law requires privity of contract in order to sustain an implied warranty claim, Defendant's motion for summary judgment will be granted on that claim. The court further finds that Plaintiffs have raised triable issues of fact as to their UTPCPL and express warranty claims, and that Plaintiffs are not barred

from recovering damages by the economic loss doctrine. Thus, Defendant's motion for summary judgment will be denied as to those issues.

Addressing the parties motions *in limine*, Plaintiffs' motion to exclude evidence of Bailey's felony convictions is granted and Defendant's motion to admit such convictions is denied. Defendant's motion to exclude Bailey's testimony is denied. Plaintiffs' motion to exclude certain opinions of Hutchcraft is granted to the extent it requests that Hutchcraft be precluded from providing an opinion on legal questions or the ultimate question of breach of the express warranty and is denied in all other respects. Defendant's motion to preclude the video of Bailey's inspection of the RV is denied. Plaintiffs' motion to omit discussion of certain topics at trial is granted with respect to disparaging remarks and evidence of attorneys costs and fees, but is denied without prejudice to renewal at trial with respect to the legal framework of the MMWA and the UTPCPL. Lastly, Plaintiffs' motion requesting that the court follow the procedure to consider attorneys fees after a jury determination on the merits is granted.

An appropriate order will follow.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: March 27, 2019